# 21-2886

## United States Court of Appeals
## for the Second Circuit

MOSHE STARK,

*Plaintiff-Appellant,*

*against*

CITY OF NEW YORK and NYPD DETECTIVE ESTEVEZ,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of New York

### BRIEF FOR APPELLEES

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-0828 or -0853
dwassel@law.nyc.gov

RICHARD DEARING
INGRID R. GUSTAFSON
DEBORAH E. WASSEL
*of Counsel*

June 6, 2022

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................iii

PRELIMINARY STATEMENT.............................................................. 1

ISSUES PRESENTED FOR REVIEW ...................................................... 3

STATEMENT OF THE CASE ................................................................. 3

    A.  Grossman's complaint alleging that he had been
          assaulted by Stark, an acquaintance, and later report
          that Stark and others were pressuring him to drop the
          charges........................................................................................ 3

    B.  Stark's arrest and Grossman's photo identification................... 8

    C.  The cell phone video showing a portion of the incident ........... 10

    D.  The district court's grant of summary judgment
          dismissing the action ................................................................ 12

SUMMARY OF ARGUMENT ................................................................ 13

ARGUMENT........................................................................................ 16

    THE DISTRICT COURT PROPERLY GRANTED
    DETECTIVE ESTEVEZ SUMMARY JUDGMENT ON
    STARK'S FALSE ARREST CLAIM ................................................ 16

    A.  The undisputed evidence established probable cause to
          arrest Stark on two independent offenses as a matter of
          law. ......................................................................................... 17

        1. Detective Estevez established probable cause to arrest
           Stark for assault.................................................................. 19

# TABLE OF CONTENTS (cont'd)

**Page**

       a.    Grossman's undisputed identification of Stark as the perpetrator of an assault established probable cause as a matter of law. ......................... 19

       b.    Neither the incomplete video Estevez never watched nor the statements Stark claims he overheard raise a triable issue of fact. .................. 22

    2. The undisputed evidence also established probable cause to arrest Stark for witness intimidation. .................... 31

  B.  At a minimum, Detective Estevez is entitled to qualified immunity on the false arrest claim. ........................... 38

CONCLUSION ......................................... 45

CERTIFICATE OF COMPLIANCE ....................................... 46

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ...................................................................... 17

*Ashley v. City of New York,*
992 F.3d.128 (2d Cir. 2021) ...................................................... 37, 38

*Bellamy v. City of N.Y.,*
914 F.3d 727 (2d Cir. 2019) .............................................................. 37

*Betts v. Shearman,*
751 F.3d 78 (2d Cir. 2014) ................................................................ 20

*Boyd v. City of N.Y.,*
336 F.3d 72 (2d Cir. 2003) ................................................................ 31

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ........................................................................... 16

*Colon v. City of N.Y.,*
60 N.Y.2d 78 (1983) ..................................................................... 18, 19

*Covington v. City of N.Y.,*
171 F.3d 117 (2d Cir. 1999) .............................................................. 18

*Curley v. Vil. of Suffern,*
268 F.3d 65 (2d Cir. 2001) ......................................................... 22, 30

*De Lourdes Torres v. Jones,*
26 N.Y.3d 742 (2016) ........................................................................ 17

*Devenpeck v. Alford,*
543 U.S. 146 (2004) ..................................................................... 32, 36

*Dickerson v. Napolitano,*
604 F.3d 732 (2d Cir. 2010) .............................................................. 18

iii

*District of Columbia v. Wesby,*
138 S. Ct. 577 (2018) ....................................................... 18, 39

*Dufort v. City of N.Y.,*
874 F.3d 338 (2d Cir. 2017) ................................................. 31

*Garcia v. Doe,*
779 F.3d 84 (2d Cir. 2014) ................................................... 39

*Graham v. Long Island R.R.,*
230 F.3d 34 (2d Cir. 2000) ................................................... 17

*Harrison v. County of Nassau,*
804 F. App'x 24 (2d Cir. 2020) ............................................ 30

*Hernandez v. U.S.,*
939 F.3d 191 (2d Cir. 2019) ............................................ 24, 25

*Hosea v. City of St. Paul,*
867 F.3d 949 (8th Cir. 2017) ............................................... 42

*Jaegly v. Couch,*
439 F.3d 149 (2d Cir. 2006) ................................................. 32

*Jeffreys v. City of NY,*
426 F.3d 549 (2d Cir. 2005) ................................................. 17

*Jocks v. Tavernier,*
316 F.3d 128 (2d Cir. 2003) ................................................. 23

*Jurkowitsch v. Choudhury,*
673 F. App'x 44 (2d Cir. 2016) ............................................ 41

*Kerman v. City of N.Y.,*
261 F.3d 229 (2d Cir. 2001) ............................................ 22, 25

*Krause v. Bennett,*
887 F.2d 362 (2d Cir. 1989) ............................................... 24

*Lowth v. Town of Cheektowaga,*
82 F.3d 563 (2d Cir. 1996) ................................................. 41

*Martinez v. Simonetti,*
202 F.3d 625 (2d Cir. 2000) ......................................... 19, 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) ............................................................ 17

*McGee v. Dunn,*
672 F. App'x 115 (2d Cir. 2017) ........................................ 43

*Messerschmidt v. Millender,*
565 U.S. 535 (2012) ............................................................ 38

*Mitchell v. City of N.Y.,*
749 F. App'x 75 (2d Cir. 2019) .......................................... 40

*Mitchell v. City of N.Y.,*
841 F.3d 72 (2d Cir. 2016) ........................................... 25, 40

*Monell v. Department of Social Services,*
436 U.S. 658 (1978) ............................................................ 12

*Mullenix v. Luna,*
577 U.S. 7 (2015) ................................................................ 39

*Panetta v. Crowley,*
460 F.3d 388 (2d Cir. 2006) ............................... 19, 22, 23

*Pehush v. Ashworth,*
757 F. App'x 47 (2d Cir. 2018) .......................................... 25

*People v. Bigelow,*
66 N.Y.2d 417 (1985)............................................................... 18

*People v. Delgado,*
143 A.D.2d 1033 (2d Dep't 1988)......................................... 33

*People v. Franov,*
146 A.D.3d 978 (2d Dep't 2017).......................................... 35

*People v. Gamble,*
74 N.Y.2d 904 (1989).............................................................. 35

*People v. Gonzalez,*
138 A.D.2d 622 (2d Dep't 1988).......................................... 19

*People v. Soper,*
209 A.D.2d 829 (3d Dep't 1994).......................................... 35

*People v. Yong Yi Wu,*
225 A.D.2d 358 (1st Dep't 1996).......................................... 35

*Russo v. City of Bridgeport,*
479 F.3d 196 (2d Cir. 2007) ...............................20, 23, 28, 29

*Simpson v. City of N.Y.,*
793 F.3d 259 (2d Cir. 2015) ................................................. 18

*Singer v. Fulton County Sheriff,*
63 F.3d 110 (2d Cir. 1995) .....................................17, 18, 31

*Stansbury v. Wertman,*
721 F.3d 84 (2d Cir. 2013) ....................................23, 29, 31

*Triolo v. Nassau Cty.,*
22 F.4th 98 (2d Cir. 2022)..........................................24, 25

*U.S. v. Daley,*
692 F. App'x 57 (2d Cir. 2017) .......................... 33

*U.S. v. Taylor,*
752 F.3d 254 (2d Cir. 2014) ............................. 30

*Universal Church v. Geltzer,*
463 F.3d 218 (2d Cir. 2006) ............................. 13

*Waldron v. Milana,*
541 F. App'x 5 (2d Cir. 2013) ........................... 26

*Weyant v. Okst,*
101 F.3d 845 (2d Cir. 1996) ......................... 17, 18

*White v. Pauly,*
137 S. Ct. 548 (2017) .................................. 38

*Williams v. Amtrak,*
830 F. App'x 46 (2d Cir. 2020) .......................... 28

*Williams v. City of N.Y.,*
114 A.D.3d 852 (2d Dep't 2014) ......................... 19

*Zalaski v. City of Hartford,*
723 F.3d 382 (2d Cir. 2013) ............................. 38

**Statutes**

42 U.S.C. § 1983 ........................................ 1

New York Penal Law § 120.05 ........................... 20

New York Penal Law § 215.15 ........................... 33

**Other Authorities**

F. R. Civ. P. 56(a) ..................................... 16

# PRELIMINARY STATEMENT

Plaintiff Moshe Stark brought this action under 42 U.S.C. § 1983 after he was arrested based on David Grossman's complaint identifying Stark as the person who assaulted him with a power drill and damaged two parking signs on his property. Stark's criminal case was eventually dismissed. He then sued the detective who arrested him along with the City of New York alleging claims for false arrest and municipal liability. The U.S. District Court for the Eastern District of New York (Kuntz, J.) granted the City's motion for summary judgment. Stark now appeals only the dismissal of his false arrest claim. This Court should affirm.

Stark's false arrest claim fails because the undisputed evidence established that Detective Estevez had probable cause to arrest him as a matter of law. There is no genuine dispute that Grossman named Stark, an acquaintance, as his assailant at least twice, or that he complained to Estevez that Stark, and other members of his community, pressured him to withdraw his complaint. That evidence established probable cause to arrest on the independent grounds of assault and witness intimidation.

Contrary to Stark's contentions, he failed to raise a triable issue as to probable cause on either charge. On assault, he is simply incorrect that

Estevez, who already had probable cause based on two identifications, was required to view an unauthenticated video on his lawyer's cell phone before arresting him. And even if she was, the video would not have dissipated probable cause. The video does not show the full incident and not only failed to exculpate Stark, but rather inculpated him because it established his presence at the scene and his possession of the power drill with which he reportedly assaulted Grossman. Nor is Stark correct that he raised a triable issue by claiming that Grossman's third, photographic identification was coerced. Grossman had already identified Stark twice, and the exchange Stark claims he overheard was not, in fact, coercive.

On witness intimidation, Stark insists that a jury must decide if Estevez fabricated Grossman's reports to her, but such an inference would be entirely speculative on this record. Stark has no personal knowledge to dispute her testimony, Grossman's expressions of fear were recorded in police paperwork, and Stark concedes that he and others were, in fact, pressuring the police and Grossman to drop the charges.

At the very least, Estevez is entitled to qualified immunity. Stark has not come close to establishing that no reasonable officer would have found probable cause to arrest him under the circumstances.

## ISSUES PRESENTED FOR REVIEW

Did the district court properly grant Detective Estevez summary judgment on Stark's false arrest claim, where the undisputed evidence established probable cause to arrest him as a matter of law on two independent grounds, or at minimum established that she was entitled to qualified immunity?

## STATEMENT OF THE CASE

### A. Grossman's complaint alleging that he had been assaulted by Stark, an acquaintance, and later report that Stark and others were pressuring him to drop the charges

The following facts are drawn from the summary judgment record and are undisputed except as noted. The complainant, David Grossman, and the plaintiff, Moshe Stark, were acquaintances who lived a few blocks apart (A32, 121). On May 28, 2018, Grossman reported to an NYPD officer that, the previous night, Stark had stolen two signs from his fence, damaged his vehicle, and hit him in the head with a power drill (A30-32). Grossman gave Stark's name and address and expressed fear for his personal safety (A31-32). Grossman said there was no surveillance video at his home (A31, 56, 80). His statements were contemporaneously

documented in a complaint report and the case was later assigned to Detective Ilene Estevez for investigation (A51).[1]

Detective Estevez then interviewed Grossman at the precinct (A36, 53). He told her that Stark had taken a sign from his fence and broken the windshield on his car (A36, 53). When he confronted Stark, Stark hit Grossman in the head with a power drill (A36, 54). Grossman described that the assault caused a large, painful bump on his head (A36). He showed Detective Estevez the bump, though she could not see anything because it was obscured by his hair (A74). He again specifically named Stark as the person who hit him and provided Detective Estevez with Stark's contact information and phone number (A36, 54, 58). Grossman stated that there were other witnesses at the scene, but that they were friends of Stark and that he did not know their names (A58).

At the interview, Grossman also expressed fear of retaliation from Stark, explaining that he had failed to ask for a rabbi's permission to

_____

[1] Stark inaccurately states in his brief that the complaint report falsely claimed that a police canvas for video was negative (App. Br. 6). But the complaint report does not contain a notation that there was a police canvas for video, or that it was negative. Instead, the complaint report contains separate notations that: (1) there was no video or surveillance, and (2) a canvas of unspecified nature was unsuccessful (A31). Indeed, as Detective Estevez explained, it was Grossman who stated that there was no video or surveillance at his home, where the incident occurred (A56).

speak to the police, as was expected in his community (A54). He had subsequently received phone calls and visits from "members of the community threatening him and telling him to drop the charges" (A54-55). In her contemporaneously prepared DD-5 related to this interview, Detective Estevez noted that Grossman asked for an order of protection because he was "in fear of retaliation from the perpetrator due to filing [a] complaint" (A36).

Detective Estevez called Stark to inform him that he needed to turn himself in at the precinct because of the complaint made against him (A59-60, 125, 154). Stark answered that he had spoken with Grossman, who was "not going to pursue charges" (A60). Estevez demurred, stating that to her knowledge, Grossman wanted to move forward, and that in any event Stark still needed to come to the precinct (A62). Stark said, "I am going to call him right now and check to see if that's the truth," to which Estevez replied if he continued to contact Grossman, that conduct would be considered "tampering with a witness" (A62).

In describing the same call during his deposition, Stark did not deny making any of these statements (see A126). What is more, he admitted telling Estevez that he had a power drill in his hand around the

time of the alleged incident but claimed that he had denied hitting anyone with it (A126). At his deposition, Stark also sought to explain the presence of the power drill by claiming that he had been using it that night to install a "gooseneck" in his car, heard a commotion, and then carried the power drill over to Grossman's driveway (A122). Stark claimed that he saw another man take the signs off the fence, and though he could not identify him, said that he had seen him near the synagogue (A123-124). According to Stark, Grossman approached him and started yelling at him, at which point Stark put the drill down, and the two of them had a verbal argument (A123). Stark did not testify that he had told his version of events to Detective Estevez on their call.

After Grossman's initial conversation with Detective Estevez but before Stark's arrest, Grossman called Estevez three or four times to report that Stark had been "calling and intimidating him and telling him that he better not press charges against him," that other members of the community were doing the same, and that he was afraid for his safety (A61). At her deposition, Estevez testified that, at the time, she consulted her supervisor about charging witness tampering or intimidation but was told "to just go with the assault felony" (A61). In addition to her

supervisor, Estevez testified that she had also told the District Attorney's Office, and that the ADA had told her that Grossman had also reported the harassment to their office (A83).

Meanwhile, Stark himself admitted that he and community figure Rabbi Kletzky spoke to Grossman on a three-way call (A127-128). Stark claimed that Kletzky assured him that "they" would go to the precinct to drop the charges, and later told Stark that "they" had in fact gone but the police refused to drop the charges (A127-128). Detective Estevez, however, testified that it was only Rabbi Kletzky who came to the precinct, and that he told her that "[she] was to drop the charges" (A68). Rabbi Kletzky claimed that he had spoken to Grossman at Stark's behest, and Stark wished to withdraw the case (A68). Detective Estevez informed the rabbi that he had no authority in the matter, and that speaking to Grossman was witness intimidation (A68). Rabbi Kletzky insisted that "maybe [she didn't] understand how this community works," at which point Estevez asked him to leave the precinct (A68).

After the rabbi's visit, Estevez called Grossman to see if the rabbi's claims were true. Grossman reiterated his desire to pursue the case and asked for an order of protection (A71). Later, four additional people from

the community "demanded" to speak with her to convince her to drop the charges, but she refused to speak with them or anyone else (A69-70). Neither the rabbi nor any of the other community members stated that Grossman had lied about the incident, nor did anyone mention any video evidence of the incident (A69-70).

### B. Stark's arrest and Grossman's photo identification

When Stark ultimately turned himself in at the precinct, Estevez placed him in an interrogation room and closed the door (A132-133). Estevez then placed Grossman, who had come to the precinct at the same time, in her supervisor's office that was more than ten feet from the interrogation room where Stark sat (A75-76).

Estevez testified that, in the presence of her supervisor, Grossman then signed an identification photograph of Stark as the person who hit him (A72-73, 156, 159). Estevez's supervisor reconfirmed that Grossman wished to pursue the case despite the police having received information to the contrary; Grossman responded that, if the police had been told otherwise, that was coming from the same people who were "threatening me in my community because I didn't follow the proper steps as adhere[d] to by the Jewish community" (A78). Rather, he was happy Stark was

being arrested and reiterated that he wanted an order of protection because he was afraid of retaliation (A73).

Estevez opined—based on her own experience in that interrogation room—that it would have been impossible for Stark, who was sitting in one interrogation room, to hear her speaking to Grossman in the other interrogation room (A76). Stark nonetheless maintained that he heard Grossman speaking because he had "a very interesting voice" (A133). According to Stark—even though it was undisputed that Stark and Grossman were acquaintances and Grossman had filed a complaint against Stark—Grossman told police that he did not know "this guy" and that he had "never seen him before" (A133). Stark said that he then heard the police say "if you are not going to say this is the guy then we are going to have to lock you up for false arrest," at which point Grossman identified Stark (A133). Detective Estevez testified that at no point did Grossman express an inability to identify Stark (A73, 77).

Detective Estevez formally placed Stark under arrest (A133-134). According to Charles Finkelstein, Stark's attorney in the criminal proceeding, the case against Stark was later dismissed on speedy trial grounds because the prosecutor "failed to corroborate the case" (A182).

## C. The cell phone video showing a portion of the incident

Prior to his arrest, Stark obtained video surveillance from a nearby store owner (A129). Then, the day before Stark turned himself in at the precinct, he called Detective Estevez and said "what if I tell you I have a video that shows that I didn't do it" (A87-88). Estevez replied that he should bring it the following day (A87-88).

Finkelstein accompanied Stark to the precinct when he went to turn himself in (A129, 179). According to Finkelstein, Stark had told him that he was "nowhere near" the location of the incident and provided him with a video (A175, 177). When the two first arrived, Finkelstein spoke to Detective Estevez alone and told her he had a video on his cell phone that he believed would exonerate his client (A178-179, 181). Finkelstein claimed that Estevez said she had a sworn complaint from Grossman and was not going to watch the video because she was not required to do so (A180-181). At her deposition, Detective Estevez agreed that Finkelstein had mentioned a video but testified that he did not tell her what it depicted, nor ever provide the video to her (A64-66, 86). She did not know

why Stark had not provided it (A89). She noted that, had she been presented with a video, she would have watched it (A66).[2]

It is undisputed that Detective Estevez did not watch the video (A66), which in any event does not show the entire incident (App. Br. 7). The video itself is approximately 7 minutes in length and contains no sound (A130, 204). Approximately half the frame is obscured by a wall, and the top of the frame contains a large billboard blocking a view of the sidewalk beyond it (A204). In the video, at least one person appears to repeatedly pull at the sign on the fence, though the person's face is never visible—either due to shadow or their back being turned to the camera (A204 at 9:27:15-9:29:05, 9:27:20-9:31:37).[3] The person pried the sign off the fence and carried it toward a parked car (A204 at 9:31:38-9:31:43). Several people milled around on the sidewalk (A204 at 9:31:43-9:32:30). Subsequently, an individual—whom Stark would identify at his deposition as himself (A131)—appears at the top of the screen (A204 at 9:31:56). The individual then bends down to grab an object—which Stark

_____

[2] Estevez described working on a previous, unrelated case where the suspect had provided her with exculpatory video (A86). After watching that video, she had obtained permission from her entire chain of command, the NYPD legal bureau, and the District Attorney's Office to arrest the complainant for filing a false report (A86).

[3] Citations to A204 followed by a time stamp refer to the video provided to the Court.

testified was a drill (A131-132)—from the sidewalk and walks off screen (A204 at 9:32:32-9:32:36). A man runs across the top of the frame, then the video cuts off (A204 at 9:32:41).

## D. The district court's grant of summary judgment dismissing the action

After his criminal case was dismissed, Stark commenced this action, alleging federal claims for false arrest against Detective Estevez and municipal liability against the City under *Monell v. Department of Social Services,* 436 U.S. 658 (1978) (A11-12, 210). Defendants moved for summary judgment dismissing the claims against them (A21-22, 210). They contended that the existence of probable cause based on the interview with Grossman and his identification defeated Stark's false arrest claim, that in any event Detective Estevez was entitled to qualified immunity based on arguable probable cause, and that plaintiff failed to establish a constitutional violation sufficient to support a *Monell* claim (EDNY ECF No. 23-2).

The district court granted the motion and dismissed the case in its entirety (A208). Even assuming Stark's version of events was true, the court found that Detective Estevez had probable cause to arrest him after

12

Grossman specifically identified him as the perpetrator of a crime against him (A212). It rejected Stark's argument that Estevez's refusal to watch the video negated probable cause because there was no obligation for her to investigate exculpatory defenses (A213). Finally, the court rejected Stark's argument that the identification was coerced because probable cause existed before the allegedly tainted identification procedure based on the prior identifications (A213-214). In the alternative, the court found that the facts at least established arguable probable cause, triggering qualified immunity (A214).

The court also dismissed the municipal liability claim against the City (A214-215). Stark does not contest that portion of the district court's decision in his brief (Appellant's Brief (App. Br.) 3) and has accordingly abandoned the claim. *Universal Church v. Geltzer*, 463 F.3d 218, 229 (2d Cir. 2006) (claims not raised by appellant deemed abandoned).

## SUMMARY OF ARGUMENT

The district court correctly granted defendants summary judgment on Stark's claim for false arrest because there was probable cause to arrest him for assault and witness intimidation as a matter of law. Stark does not dispute that Grossman, the complaining witness, identified him

by name at least twice as the person who had struck him on the head with a power drill, causing pain and injury, and that Stark himself told Estevez that he was at the scene with a power drill. Estevez further gave undisputed testimony that Grossman repeatedly reported to her that Stark, along with other members of his community, were threatening, intimidating, and pressuring him that he had "better not press charges against him," such that Grossman expressed fear of retaliation from Stark and requested an order of protection. Stark even admits participating in a three-way call with Grossman and a member of his community in which the three discussed plans to go to the precinct to drop the charges. Under established principles, this evidence, which includes the victim's detailed report of crimes committed as well as the identity of the perpetrator, amply established probable cause to arrest as a matter of law.

Stark failed to raise a triable issue of fact as to probable cause to arrest for either crime. As to assault, his argument that Detective Estevez refused to investigate what he claimed was an exculpatory video fails to raise any triable issue for two reasons. First, because Estevez already had probable cause based on Grossman's identifications of Stark

as the perpetrator of the assault, she had no duty to investigate exculpatory evidence before making the arrest. Second, and in any event, the video would not have dissipated probable cause because it was not exculpatory—it did not show the entire incident or clearly show the incident's participants. To the contrary, if anything, the video is partially inculpatory because, even according to Stark, it places him at the scene with the alleged instrument of the assault.

Stark's next argument—that Grossman's photographic identification was "coerced"—similarly fails to raise any material issue because Estevez already had probable cause to arrest Stark based on Grossman's multiple prior identifications. Those identifications were undisputedly voluntary, and the later identification could not somehow retroactively taint them. In any event, even accepting Stark's description of the conduct of the photographic identification, what he describes was not coercive.

Stark's attempts to raise a triable issue of fact as to probable cause to arrest for witness intimidation similarly fail. Stark's suggestion that the detective fabricated this claim in response to the civil lawsuit is entirely speculative and not based on any first-hand knowledge.

Moreover, it is belied by the undisputed evidence documented in police reports that Grossman repeatedly and consistently expressed fear of Stark. It is also belied by Stark's admission that he participated in a three-way call in which the participants discussed Grossman dropping the charges.

At the very least, the district court correctly granted summary judgment to Detective Estevez because she had arguable probable cause entitling her to qualified immunity. Under these circumstances, it cannot be said that no reasonable law enforcement officer would conclude that there was probable cause to arrest Stark.

## ARGUMENT

### THE DISTRICT COURT PROPERLY GRANTED DETECTIVE ESTEVEZ SUMMARY JUDGMENT ON STARK'S FALSE ARREST CLAIM

Summary judgment is appropriate when, construing all evidence in the light most favorable to the non-moving party and drawing all inferences in its favor, "there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." F. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat a motion for summary judgment, the opponent must come forward

with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). This evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jeffreys v. City of NY*, 426 F.3d 549, 553 (2d Cir. 2005). Here, reviewing the grant of summary judgment de novo on the one claim Stark contests, *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000), this Court should affirm the award of summary judgment.

## A. The undisputed evidence established probable cause to arrest Stark on two independent offenses as a matter of law.

The undisputed evidence adduced at summary judgment shows that Stark's false arrest claim was properly dismissed as a matter of law. To state a claim for false arrest, Stark must prove that (1) the police intended to confine him; (2) he was conscious of the confinement; (3) he did not consent to it; and (4) the confinement was not privileged. *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (2016); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (noting that a § 1983 false arrest claim is "substantially the same" as one under New York law); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). In the case of a

warrantless arrest, it is the defendant's burden to establish that the confinement was privileged in that it was supported by probable cause. *Id.* Probable cause is a complete defense to an action for false arrest. *Covington v. City of N.Y.*, 171 F.3d 117, 122 (2d Cir. 1999); *see, e.g.*, *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015); *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

"Probable cause is not a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (cleaned up).[4] The quantum of suspicion amounting to probable cause "consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty." *Colon v. City of N.Y.*, 60 N.Y.2d 78, 82 (1983). It does not require proof sufficient to make out a prima facie case, or to warrant a conviction beyond a reasonable doubt, "but merely information sufficient to support a reasonable belief that an offense has been or is being committed" by the suspect, information that "must be judged under the totality of the circumstances." *People v. Bigelow*, 66 N.Y.2d 417, 423

---

[4] This brief uses "(cleaned up)" to indicate that internal quotation marks, alterations, and citations have been omitted from quotations.

(1985). An officer may act with probable cause even if the officer's reasonable belief ultimately proves to be mistaken. *Colon*, 60 N.Y.2d at 82.

When making a probable cause determination, police officers "are entitled to rely on the victims' allegations that a crime has been committed." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). Where the victim provides an accusation against a specific individual, it is presumed to be reliable. *Williams v. City of N.Y.*, 114 A.D.3d 852, 853 (2d Dep't 2014); *People v. Gonzalez*, 138 A.D.2d 622, 623 (2d Dep't 1988); *see Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (probable cause exists where information stems from "the putative victim or eyewitness").

1. **Detective Estevez established probable cause to arrest Stark for assault.**

   a. **Grossman's undisputed identification of Stark as the perpetrator of an assault established probable cause as a matter of law.**

Estevez first established that there was probable cause to arrest Stark for assault as a matter of law. A charge of second-degree assault requires that, with intent to cause physical injury to another person, the

actor causes such injury to that person by means of a deadly weapon or dangerous instrument. New York Penal Law (PL) § 120.05(2).

Here, Grossman's reports to Estevez satisfied all elements of assault. He undisputedly identified Stark by name twice as the individual who had hit him on the head with a power drill, causing both pain and injury to his head (A36). Grossman even provided Stark's contact information and reported that he was an acquaintance, and both identifications—the first by report to a police officer and the second during an in-person interview with Estevez—were recorded contemporaneously in police paperwork (A32, 36). After Stark's arrest, Grossman signed a photo confirming the identification (A156, 159). And although Stark denied assaulting Grossman on his phone call with Estevez, he admittedly told her that he was at the scene with power drill in hand (A126). These undisputed facts established probable cause for the arrest. *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (positive identification provided probable cause for arrest); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (police entitled to rely on victim's allegations); *see, e.g., Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir.

2014) (probable cause to arrest for assault based on victim's statement defeated false arrest claim).

In the Rule 56.1 statement he submitted in the district court, Stark purported to dispute whether each of these identifications occurred (*see* A196-198), but on appeal, has correctly abandoned that contention. As Stark now concedes (App. Br. 5-6), Grossman identified him as the perpetrator in the report immediately after the incident, and in his interview with Detective Estevez. Although Stark still contends that the *photographic* identification was coerced, even he does not contend that his testimony supports a reasonable inference that the earlier identifications did not occur, or even that they were tainted. And indeed, such a contention would not make sense, as Stark offers no reason why police would target him for arrest absent the report from Grossman. Stark's claim that he overheard the police tell Grossman, after he purportedly said that he did not know who Stark was, that they would arrest him for filing a false complaint (A133), only *supports* the uncontroverted fact that Grossman had previously named Stark as the perpetrator.

### b. Neither the incomplete video Estevez never watched nor the statements Stark claims he overheard raise a triable issue of fact.

Stark does not dispute that Grossman's statements to Detective Estevez satisfied the elements of assault. Stark nonetheless contends that he raised triable issues of fact as to probable cause based on the existence of purportedly exculpatory surveillance video that the detective never watched, and a photographic identification procedure that he claims was coerced. Both contentions lack merit.

As for the video, contrary to Stark's claim on appeal (App. Br. 17), it does not raise a triable issue of fact as to probable cause for multiple, independent reasons. First, Detective Estevez had no obligation to watch it as an initial matter. Because she already had probable cause based on Grossman's identifications *before* Stark's attorney claims he offered it to her, she was "neither required nor allowed to continue investigating, sifting and weighing information." *Panetta v. Crowley*, 460 F.3d at 398 (cleaned up). Though an officer may not ignore "plainly exculpatory" evidence of which he or she is aware, *Kerman v. City of N.Y.*, 261 F.3d 229, 241 (2d Cir. 2001), an arresting officer "does not have to prove plaintiff's version wrong before arresting him." *Curley v. Vil. of Suffern*,

268 F.3d 65, 70 (2d Cir. 2001); *see Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (no duty to investigate exculpatory defenses). Neither does an officer's refusal to investigate "protestations of innocence" negate probable cause. *Panetta v. Crowley*, 460 F.3d 388, 395-396 (2d Cir. 2006); *see Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (affirming dismissal of false arrest claim despite exculpatory video where probable cause existed at the time of arrest); *Stansbury v. Wertman*, 721 F.3d 84, 94 (2d Cir. 2013) ("some exculpatory evidence does not make an arrest illegal when the totality of evidence still establishes probable cause to believe that the suspect committed the crime").

Stark nonetheless insists that, despite Grossman's multiple identifications, Detective Estevez had a duty to view the video because it was easily available and could dissipate probable cause (App. Br. 13). But that contention cannot be squared with the established principles just articulated. Accepting that contention would impose a new duty on officers to continue investigating, despite having probable cause, so long as the evidence at issue met the definition of "easily available" and might be exculpatory. But the scope of either of those factors is nebulous at best, and imposing such a duty would fly in the face not only of established

principles, but also of sound public policy, which dictates that police need not sit as the prosecutor, judge, or jury, but may make an arrest upon establishing probable cause. *See Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989). That should be especially true where the alleged offense is a violent crime like assault, and there may be good reasons for police to move quickly to protect the victim.

Indeed, the cases Stark cites do not, in fact, stand for the principle that an officer who has already obtained probable cause needs to continue investigating potentially exculpatory evidence so long as it is easily attainable (App. Br. 14). Those courts instead reasoned that the subject officers were all aware of specific facts which should have led them to doubt the existence of probable cause as an initial matter and to investigate further. *See Triolo v. Nassau Cty.,* 22 F.4th 98 (2d Cir. 2022) (police officer arrested plaintiff for an allegedly vicious assault despite the fact that victim had no injuries and a third-party witness stated that plaintiff was the victim and not the aggressor, which should have led the officer to investigate further); *Hernandez v. U.S.*, 939 F.3d 191 (2d Cir. 2019) (officials arrested and detained plaintiff on an immigration detainer bearing someone else's name, a mismatch that should have led

the officers to investigate further); *Mitchell v. City of N.Y.*, 841 F.3d 72, 78 (2d Cir. 2016) (officers arrested plaintiff for trespassing in a building based on an unsubstantiated assumption that the building was abandoned, contradicted by the fact that the building had a visible for-sale sign and was obviously not abandoned or part of a trespass-affidavit program); *Pehush v. Ashworth*, 757 F. App'x 47, 51 (2d Cir. 2018) (summary order) (officer arrested plaintiff in reliance only on second-hand accounts, disregarded exculpatory evidence from first-hand account, and lack sufficient facts to support elements of charged offense); *Kerman v. City of N.Y.*, 261 F.3d 229, 240–41 (2d Cir. 2001) (officers seized and involuntarily hospitalized plaintiff following anonymous call that could not itself provide probable cause, and despite observing behavior from plaintiff that contradicted the call's accuracy).

Here, Detective Estevez did not have similar, objective evidence contradicting Grossman's initial complaint or identification of Stark by name. Stark's protestations of innocence alone did not create a triable issue of fact, unlike the objective and exculpatory evidence of which the officers were already aware in *Triolo, Hernandez, Mitchell, Pehush*, and *Kerman*.

Second, and in any event, any omission by Estevez regarding the video did not cause a constitutional violation here because the video is not "plainly exculpatory" and thus fails to undermine probable cause to arrest for assault.[5] *See e.g., Waldron v. Milana*, 541 F. App'x 5, 9 (2d Cir. 2013) (summary order) (affirming dismissal of false arrest claim where alleged exculpatory evidence was not exculpatory on its face and was insufficient, standing alone, to defeat probable cause). Although Stark is correct that the video did not depict Stark hitting Grossman with a power drill (App. Br. 15), that means only that the video does not itself establish the fact of the assault. Even Stark concedes that that the video does not portray the entire incident (App. Br. 5), and nothing in the video indicates that the assault could not have happened outside of the frame.

Rather, even drawing all reasonable inferences in Stark's favor, the video was *inculpatory*. To the extent anything was visible at all, and to the extent Estevez would have been required to conclude that Stark was the individual in the video that he claimed to be, the video confirmed Stark's presence at the scene and that he interacted with Grossman. It

---

[5] Notably, even Stark does not seriously claim that the video formed the basis of the case's eventual dismissal. According to Finkelstein, Stark's attorney in the criminal proceeding, the case was dismissed on speedy trial grounds (A182).

further established that he was holding a power drill, the weapon with which Grossman reported being assaulted, during a confrontation at night.

Stark also contends that the video conclusively shows that the person who removed the no parking signs from Grossman's fence was not Stark (App. Br. 15). But the video contains no sound, is so dark that it is impossible to make out much detail, and is half obscured by a wall and billboard. These conditions of the video make it difficult to identify anyone on a large computer screen—a task that would have been made more difficult by the cell phone on which Finkelstein claims he asked Estevez to view the video. Moreover, the face of the person—or persons— removing the signs from the fence is never clearly visible, such that the individual cannot be conclusively identified. Although Stark asserted at his deposition that this was a different individual and that he appeared elsewhere in the video (A130-132), Detective Estevez would not have been required to reach this conclusion from viewing the video alone.

Moreover, even if the video had raised some question as to the accuracy of some parts of Grossman's story, that would not defeat probable cause. Inconsistencies arise in nearly every investigation and

police are neither required nor expected to resolve them prior to making an arrest. *See, e.g., Williams v. Amtrak*, 830 F. App'x 46, 48 (2d Cir. 2020) (summary order) (that officers did not find explicit pictures of complainant on plaintiff's phone was not entirely exculpatory for unlawful surveillance charge where witness identified plaintiff as the person who committed that act).

Stark nonetheless suggests that Estevez should have questioned Grossman's credibility because he "claimed there were no cameras near his property" (App. Br. 15). But what Grossman actually told Estevez was that his home and the site of the incident had no cameras (A56, 80). There is no inconsistency between that statement and the fact that a neighboring business had a camera. And in any event, Stark fails to explain why Estevez would have been required to draw the inference that Grossman was lying, as opposed the inference that Grossman was simply unaware of an unrelated business's surveillance capabilities.

Indeed, the instant matter is akin to the false arrest claim litigated in *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007). In *Russo*, a positive identification by the eyewitness victim established probable cause for the arrest for robbery, even where later-watched surveillance

footage completely exculpated the plaintiff. This Court upheld the initial probable cause determination as sufficient to defeat the false arrest claim. *Id*. at 204.

Turning to Stark's claim that he raised a triable issue of fact by offering evidence that Grossman's photo identification was coerced, that contention fails as well (App. Br. 16). This argument ignores that Grossman provided the police with Stark's identity when he made the initial complaint (A30-34) and confirmed the identification during a subsequent interview with Estevez (A54)—both of which occurred well before any alleged coercion on the date of Stark's arrest nearly two weeks later. Stark does not dispute that Grossman voluntarily named Stark from the outset, nor does he raise any issue as to the propriety of those initial identifications.

Accordingly, police had probable cause before, and independent of, the allegedly coercive photo identification, and there is no triable issue whether Stark actually identified Grossman. *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013) (probable cause established where evidence implicated plaintiff before allegedly flawed identification). Moreover, even accepting that Stark overheard the police say they would arrest

Grossman for filing a false report for denying having known Stark, the police reaction only buttresses the conclusion that Grossman had already identified Stark on multiple occasions, such that the officers challenged his sudden reversal.

In fact, based on Stark's own description of the interaction he claims he overheard, what he describes is hardly "coercion," which requires "abusive tactics" of which there is no evidence here. *See U.S. v. Taylor*, 752 F.3d 254, 263 (2d Cir. 2014). If Grossman in fact stated that he had "never seen" Stark before, as Stark claims (A133), that representation directly contradicted his prior identifications of Stark as his assailant. It was not coercive for the officers to respond that his prior identifications must then have been false reports.

In any event, inconsistencies in a witness's statements are insufficient to raise a triable issue of fact where the totality of the circumstances supports probable cause. *Curley v. Vil. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001); *see e.g., Harrison v. County of Nassau*, 804 F. App'x 24, 28 (2d Cir. 2020) (summary order) (inconsistent statements by a witness do not negate probable cause). Here, considering Grossman's two prior, indisputably voluntary identifications, as well as Grossman's

reports that Stark and members of his community were pressuring him to drop the charges, it was more than reasonable for Detective Estevez to continue to rely on the identification, and Stark thus fails to raise any triable issue of fact. *See Stansbury*, 721 F.3d at 91 n.7 (in determining whether identification may support probable cause, the question is whether "the identification procedure was so defective that probable cause could not reasonably be based upon it").

Finally, though Stark tacitly suggests that *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995), requires that probable cause must be supported by a written complaint, that is not the case. To the contrary, an oral statement from a victim is sufficient to support a probable cause determination. *See Dufort v. City of N.Y.*, 874 F.3d 338, 348 (2d Cir. 2017) (statements may be given weight in probable cause analysis); *Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003) (false arrest claim properly dismissed where police had oral statement).

> **2. The undisputed evidence also established probable cause to arrest Stark for witness intimidation.**

Because Detective Estevez had probable cause to arrest Stark for assault as a matter of law, this Court need go no further. But Stark has

raised a second basis for probable cause on appeal—witness intimidation (App. Br. 18-20)—that provides an independent ground for affirmance, although defendants did not rely on it before the district court. That Estevez did not ultimately arrest Stark on this charge (despite believing that she had probable cause to do so (*see* A61)) is of no moment. Probable cause is an objective standard, and it is a question of law whether the undisputed facts establish it. *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). As a result, probable cause for *any* crime, regardless of whether it was charged, may defeat a false arrest claim. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause").

Here, at the very least at the probable cause stage implicated here, the undisputed facts support the conclusion that Estevez could reasonably conclude that Stark committed witness intimidation. A person commits third degree witness intimidation when, knowing that the witness "possesses information relating to a criminal transaction," he "wrongfully compels or attempts to compel such other person to refrain from communicating such information to any court, grand jury,

prosecutor, police officer or peace officer by means of instilling in him a fear that the actor will cause physical injury to such other person." New York Penal Law § 215.15(1); *see U.S. v. Daley*, 692 F. App'x 57, 59 (2d Cir. 2017) (summary order) (statute "criminalizes *attempts* to compel a victim to refrain from providing information about a defendant's crime"); *People v. Delgado*, 143 A.D.2d 1033, 1034-35 (2d Dep't 1988) (noting that "the act of threatening someone not to report their victimization" is specifically proscribed by third-degree intimidation statute).

There is no dispute that Grossman, from the very first, told Estevez that he feared retaliation from Stark and wanted an order of protection, and that Estevez documented those statements in police paperwork (A36). There is similarly no genuine dispute that Grossman subsequently called Estevez three or four times to tell her that Stark, along with other members of his community, were calling and intimidating him and telling him that he "better not" press charges, and that he was afraid for his safety (A61). Stark himself admitted that he participated in a call with Grossman and Rabbi Kletzky in which Kletzky assured Stark that they would go to the precinct to drop the charges (A127-128). And Stark does not deny that, when Estevez called him to ask him to turn himself in, he

told her that he had spoken to Grossman, who was "not going to pursue charges" (*compare* A60, *with* A126).

Detective Estevez could reasonably conclude from these facts that Stark had placed Grossman in fear of physical injury if he continued to press charges, and intentionally so. Grossman did not simply describe requests from Stark and others to drop the charges. Instead, he described a pressure campaign of repeated threats and intimidation, including statements from Stark that he "better drop" the charges, which Grossman told Estevez caused him to fear for his safety and warranted an order of protection.

Moreover, Estevez could confirm the pressure Grossman described first-hand, as she gave undisputed testimony that no fewer than five individuals came to the precinct to pressure her to drop the charges. Stark admits that, following his call with Rabbi Kletzky and Grossman, Kletzky went to the precinct to get the police to drop the charges (A128), and Kletzky stated the reason he was involved at all was because Stark had asked for his intervention (A68, 127-128). Finally, Estevez testified that as many as four other people from the community "demanded" to speak with her to convince her to drop the charges (A69).

Courts have repeatedly upheld convictions for witness intimidation based on threats and pressure when measured against the higher burden of proof beyond a reasonable doubt. *See e.g. People v. Gamble*, 74 N.Y.2d 904, 906 (1989) (defendant's statement that if victim cooperated with the police he "will f you up" sufficient to uphold conviction beyond a reasonable doubt); *People v. Franov*, 146 A.D.3d 978, 979 (2d Dep't 2017) (proof beyond a reasonable doubt based on general threats and profane language); *People v. Yong Yi Wu*, 225 A.D.2d 358, 358 (1st Dep't 1996) (after victim reported assault but before any arrest, defendant shook his fists and yelled at victim that he was lying and should not tell anyone he had been assaulted); *People v. Soper*, 209 A.D.2d 829, 830 (3d Dep't 1994), *app. denied*, 84 N.Y.2d 1039 (1995) (demanding that intimate partner withdraw a pending charge in the context of past violence). What Grossman told Estevez, and what Estevez experienced first-hand, is certainly enough to establish probable cause, which requires a lower burden of proof.

On appeal, Stark does not dispute that the record evidence satisfies all elements of witness intimidation. Indeed, during Detective Estevez's deposition, Stark's attorney asked Estevez why she had not arrested

Stark on this ground when Grossman "was spelling out the elements of intimidating a witness" (A61). Stark insists that there is nonetheless a triable issue because a reasonable jury could infer that Estevez fabricated Grossman's reports of intimidation solely in response to the civil suit, contending that Estevez's testimony was uncorroborated, and that she did not document the harassment she experienced in police reports (App. Br. 11, 19). But Stark is simply incorrect that Estevez's testimony must be corroborated to establish probable cause as a matter of law, and he cites no case law to support that proposition (App. Br. 18). To the contrary, it is well established that a single officer's knowledge of facts inculpating a suspect may serve as the basis for probable cause. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (probable cause may stem from a single officer's knowledge).

In any event, Estevez's testimony had ample corroboration. The initial complaint report—taken by a different police officer before Estevez's involvement (A33)—documented Grossman's fear for his safety during his initial contact with the police (A31). Once the case was assigned to her and she interviewed Grossman herself, Detective Estevez contemporaneously recorded that Grossman feared retaliation from

Stark (A36). And Stark himself admitted that he participated in a call with Grossman and Rabbi Kletzky in which Kletzky assured him that they would go to the precinct and ask the police to drop the charges, and that Kletzky did in fact to the precinct for that purpose (A127-128).

Indeed, on this record, any inference that Estevez's testimony about Grossman's reports or about the pressure she experienced to drop the charges is entirely speculative, and speculation is insufficient to raise a triable issue of fact at summary judgment. *See Bellamy v. City of N.Y.*, 914 F.3d 727, 750 (2d Cir. 2019). Stark has no first-hand knowledge to contradict Estevez's testimony about Grossman's repeated complaints to her.

Contrary to Stark's contentions (App Br. 18), *Ashley v. City of New York*, 992 F.3d.128 (2d Cir. 2021), does not stand for the proposition that a police officer's testimony cannot establish probable cause as a matter of law if it is not confirmed by police paperwork. In *Ashley*, this Court held that a reasonable jury could reject the officer's deposition testimony about the basis for the plaintiff's arrest because the officer had previously signed two successive complaints recording two different grounds for the arrest, and the officer's new, and third, explanation was not reflected in

this paperwork. *See id.* at 136-137. But here, there was nothing to contradict Estevez's reports, which were instead corroborated by other evidence in the record.

## B. At a minimum, Detective Estevez is entitled to qualified immunity on the false arrest claim.

At the very least, the district court correctly held that the undisputed evidence entitles Estevez to qualified immunity. The qualified immunity doctrine "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (cleaned up). Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (cleaned up). Qualified immunity is thus a "deliberately forgiving standard of review." *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013) (cleaned up). It gives officials "breathing room to make reasonable but mistaken judgments" and protects all but those who are "plainly incompetent" or "knowingly violate the law." *Id.*

Detective Estevez is entitled to qualified immunity on Stark's false arrest claim because his arrest, at a minimum, was supported by arguable probable cause. That is, it was either objectively reasonable for Detective Estevez to believe probable cause existed, or officers of reasonable competence could at least disagree on whether there was probable cause. *See Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2014). The inquiry is not whether the officer *should* have acted as they did, or whether some hypothetical reasonable officer would have done so, but rather whether "*every* reasonable" officer would have been compelled to conclude that the arrest was unconstitutional. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (emphasis added). And here, "a reasonable officer, looking at the entire legal landscape at the time of the arrest[], could have interpreted the law as permitting the arrest[]." *District of Columbia v. Wesby*, 138 S. Ct. 577, 593 (2018).

Here, the undisputed facts established arguable probable cause as to both assault and witness intimidation. As to assault, ample precedent holds that the victim's identification of his or her alleged assailant establishes probable cause to arrest, and that an officer need not continue investigating once he or she obtains probable cause. For the reasons

already given, it would have been objectively reasonable for Estevez to refuse to view the video here in reliance on those principles. Although Stark insists that an officer must nonetheless review easily accessible evidence that could exonerate the plaintiff despite having probable cause, none of the cases Stark cites clearly establishes that principle. Indeed, Stark has not identified any case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.

Stark argues that *Mitchell v. City of New York*, 841 F.3d 72 (2d Cir. 2016), has clearly established that an officer could not ignore plainly exculpatory evidence and must make further inquiry (App. Br. 21). But because Estevez was not aware of any plainly exculpatory evidence here (and there was in fact was none), *Mitchell* would not have put Estevez on notice that probable cause for Stark's arrest was lacking. Moreover, *Mitchell* specifically left open whether the defendants in that case were entitled to qualified immunity applying that rule. *Id*. at 79. And on remand in *Mitchell*, the district court in fact found, and this Court affirmed, that the officers had arguable probable cause to arrest sufficient to support qualified immunity. *Mitchell v. City of N.Y.*, 749 F. App'x 75, 76 (2d Cir. 2019) (summary order).

Stark also cites *Jurkowitsch v. Choudhury*, 673 F. App'x 44 (2d Cir. 2016) (summary order) (App. Br. 21). But in *Jurkowitsch*, a bank employee called 911, and when the officer responded, he personally observed the plaintiff sitting in the lobby waiting to cash his paycheck, which directly contradicted the 911 caller's account. Under those circumstances, this Court found no reasonable officer would find the standard for probable cause had been met, and accordingly declined to extend qualified immunity to the defendant officer. Here, by contrast, there was nothing to contradict probable cause save Stark's own protestations of innocence, which Estevez was under no obligation to investigate. Accordingly, *Jurkowitsch* does not clearly establish that probable case was not present here.

In any event, reasonable police officers viewing the video could have at least disagreed whether it was sufficiently exculpatory so as to defeat probable cause as an initial matter. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996) (relevant question is whether the alleged exculpatory information was of a type that would have required a reasonable police officer to conclude that no probable cause existed). The video, which was dark, unauthenticated, and appeared solely on a cell

phone, did not depict the entire incident or portray its participants clearly.

And even if identification of the participants were possible, as Stark claims, the video placed him at the scene of the incident with the instrumentality of the crime in his hands. It cannot be said that every reasonable officer would have concluded that the video negated probable cause for an arrest, especially where the victim had twice identified the perpetrator by name. Since Estevez had at least arguable probable cause to believe Stark committed an assault and damaged Grossman's property, there was thus nothing to suggest that, even had Estevez watched the video earlier, she would have found it plainly contradicted Grossman's complaint sufficient to negate probable cause. *Hosea v. City of St. Paul*, 867 F.3d 949, 956 n.5 (8th Cir. 2017) ("arguable probable cause may still exist when conflicting information cannot be immediately resolved").

Noticeably absent from Stark's brief is any argument that Detective Estevez is not entitled to qualified immunity based on alleged "coercion" during the identification procedure (*see* App. Br. 20-22). In any event, as shown above, the exchange with Grossman at the precinct during the

photo identification procedure was not coercive, and because Grossman previously identified Stark, arguable probable cause existed separate from the photographic identification sufficient to support qualified immunity.

Moreover, Detective Estevez is independently entitled to qualified immunity because at least arguable probable cause supported Stark's arrest for witness intimidation. Here, Grossman told Estevez he was being threatened by Stark to drop the charges and expressed fear for his safety. That alone was sufficient to establish arguable probable cause. *See, e.g.*, *McGee v. Dunn*, 672 F. App'x 115, 117 (2d Cir. 2017) (summary order) (statement of victim sufficient to establish arguable probable cause). And Stark has not cited a single case clearly establishing the contrary.

Although Stark again argues that Estevez's testimony about Grossman's reports was a recent fabrication, and that an officer cannot rely on fabricated evidence as a basis for qualified immunity (App. Br. 22), those contentions fail for the reasons already articulated. Nothing in the record here supports a reasonable inference that Estevez fabricated Grossman's reports. Rather, the undisputed facts pointed in the opposite

direction: that Grossman stated he was being harassed by Stark to drop the charges, and his fear was contemporaneously documented in the police paperwork.

To the extent Stark contends that four individuals told Detective Estevez he was innocent and thus that she is not entitled to qualified immunity because it was unreasonable for her to rely on Grossman's reports (App. Br. 7, 22), nothing in the record supports that contention. Detective Estevez gave undisputed testimony that these four individuals did *not* tell her that Stark was innocent, and that she in fact declined to speak with them when they came to the precinct (A69-70). Though Stark now speculates that four individuals "tried to talk to Detective Estevez about Grossman's false accusations" (App Br. 7), he offers no evidence to support that contention, or any basis to conclude that these four individuals had first-hand knowledge of the incident.

## CONCLUSION

This Court should affirm the district court's grant of summary judgment.

Dated:  New York, NY
        June 6, 2022

Respectfully submitted,

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Defendants-Appellees

By:  ___/s/_____
     DEBORAH E. WASSEL
     Assistant Corporation Counsel

     100 Church Street
     New York, NY 10007
     212-356-0828
     dwassel@law.nyc.gov

RICHARD P. DEARING
INGRID R. GUSTAFSON
DEBORAH E. WASSEL
  *of Counsel*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 9,085 words, not including the table of contents, table of authorities, this certificate, and the cover.

_____/s/_____
DEBORAH E. WASSEL